UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

R. Lacey Colligan

    v.                                      Civil No. 16-cv-513-JD
                                                          Opinion No. 2019 DNH 028

Mary Hitchcock Memorial
Hospital and Dartmouth Hitchcock Clinic

O R D E R

R. Lacey Colligan brought suit against Mary Hitchcock Memorial Hospital and Dartmouth Hitchcock Clinic ("Dartmouth-Hitchcock"), alleging discrimination based on her disability, post-traumatic stress disorder, and state law claims for negligent and intentional infliction of emotional distress, defamation, and invasion of privacy. Dartmouth-Hitchcock moved for summary judgment. The court granted that motion as to Counts I, IV-VI, and VIII-X, but denied it as to Colligan's public accommodation discrimination (Counts II-III) and negligent infliction of emotional distress ("NIED") (Count VII) claims.[1]

---

[1] The court's order contains a typographical error in its conclusion. As stated in the body of the court's order, the motion for summary judgment was denied as to Count II (public accommodation discrimination) and granted as to Count IV (interference). This error has been corrected by order dated January 31, 2019 (doc. no. 63).

Colligan moves for reconsideration of the summary judgment order in Dartmouth-Hitchcock's favor on her federal and state interference claims (Counts IV-V). Dartmouth-Hitchcock objects to Colligan's motion.

Dartmouth-Hitchcock also filed a motion for reconsideration of the summary judgment order as to Colligan's NIED claim. Colligan objects to Dartmouth-Hitchcock's motion.

## Standard of Review

Reconsideration of an order "is an extraordinary remedy which should be used sparingly." Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (internal quotation marks omitted). To succeed, a movant must "demonstrate that the order was based on a manifest error of fact or law . . . ." LR 7.2(d). Reconsideration is not "a vehicle for a party to undo its own procedural failures" or a means to "advance arguments that could and should have been presented to the district court prior to" its decision. Iverson v. City of Boston, 452 F.3d 94, 104 (1st Cir. 2006). As such, the court will not grant reconsideration based on arguments that were not previously made or based on arguments that were rejected in the prior order. Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 930 (1st Cir. 2014).

Discussion

I.  Colligan's Motion for Reconsideration

Colligan argues that the court erred by granting Dartmouth-Hitchcock's motion for summary judgment on her claims that Dartmouth-Hitchcock interfered with her exercise of her right to access Dartmouth-Hitchcock's facilities contrary to 42 U.S.C. § 12203(b) and NH RSA § 354-A:11.  In support, she contends that the court incorrectly found that "all the restrictions on [her] access to Dartmouth-Hitchcock were imposed immediately after her encounter on September 1, 2015"; that "it incorrectly assumed Dartmouth-Hitchcock's later requirement that Dr. Colligan must be escorted to her appointments was the quickly-corrected mistake of a security officer"; and that "it failed to recognize that after Dr. Colligan filed her charges of discrimination, Dartmouth-Hitchcock responded by stating that she could no longer go to any of its facilities."  Doc. 56-1 at 1-2. Colligan also contends that the court incorrectly stated the reason that she moved to Massachusetts.  Dartmouth-Hitchcock responds, arguing that Colligan relies on facts that find no support in the record and that the issues she raises are not material to her interference claims.

A. Timing of Dartmouth-Hitchcock's Imposition of Access Restrictions

As is stated in the summary judgment order, to establish a claim for interference, a plaintiff must prove that "(1) she engaged in, or aided others in engaging in, conduct protected by the ADA; (2) she suffered an adverse action prohibited by § 12203(b); and (3) there was a causal connection between her conduct and the adverse action."  Doc. 55 at 23 (citing Goldblatt v. Geiger, 867 F. Supp. 2d 201, 211 (D.N.H. 2012)). The causal connection requires the plaintiff to show that the defendant's interference occurred when she was exercising an ADA protected right or because she engaged in protected conduct. Feeley v. New Hampshire, 2010 WL 4774274, at *5 (D.N.H. Aug. 20, 2010).

Colligan finds it significant that Dartmouth-Hitchcock did not "immediately" impose the access restrictions on September 1, the day of the incident with Nancy Birkmeyer.  She asserts that Dartmouth-Hitchcock waited until the next day, September 2, 2015, to impose the restrictions in a letter.  Based on the record evidence, however, Dartmouth-Hitchcock made its decision to impose the restrictions on September 1.  Doc. 48-18 at 4.

In addition, it is unclear why the decision date makes any difference in this case.  Colligan does not show or even argue that she engaged in protected conduct after Dartmouth-Hitchcock

4

made its decision to impose the restrictions but before she received the September 2 letter. Therefore, for the purpose of Colligan's interference claim, the date of Dartmouth-Hitchcock's decision to impose the restrictions is not material. Colligan has not shown that the court erred in using the September 1 date in the discussion regarding Colligan's interference claim.

B. Escort Requirement

Colligan also argues that the court erred in finding that the restrictions never increased after they were initially imposed. She contends that the restrictions were increased when a security officer[2] "was advised" to provide her an escort to a September 29, 2015, medical appointment. She disputes Dartmouth-Hitchcock's characterization of that incident as a "mistake" that was quickly corrected because Dartmouth-Hitchcock did not acknowledge it until two months later.

On October 19, 2015, Colligan's attorney sent Dartmouth-Hitchcock a letter raising several issues about the events of September 1, 2015, and Colligan's termination. Among those issues, Colligan's attorney noted the September 29, 2015,

---

[2] Colligan takes issue with the court's characterization of the official as a "security officer," stating that he was "not merely a security officer," but a "'Shift Supervisor' for security." Doc. 56-1 at 6. Colligan makes no showing or argument that the officer's supervisory status is material.

5

incident with Dartmouth-Hitchcock's security officers, stating the following:

> [O]n this visit, [Colligan] was advised that she could not proceed directly to see her treatment provider but had to present at Security. When she presented at Security, she was subjected to the distress of having to stand in the hallway while her colleagues passed by. Members of Security were loudly asking her to declare where her appointment was scheduled. It was a visit to her mental health provider and she was humiliated by having to disclose this in this very public setting. This caused her great emotional distress resulting in her being sent to the emergency room.

Doc. 48-32 at 4. In a letter dated December 7, 2015, Dartmouth-Hitchcock provided an omnibus response to several of the issues raised by Colligan's attorney. In this response, Dartmouth-Hitchcock rejected Colligan's characterization of the events of September 29 but apologized for its security officers' "confusion" about the necessity of having an officer escort Colligan to her appointment and stated that "Dartmouth-Hitchcock never intended to require Dr. Colligan to have a Security escort to any appointment." Doc. 48-33 at 2.

Contrary to Colligan's argument, the timing of Dartmouth-Hitchcock's response is not sufficient to create a genuine dispute of fact about whether Dartmouth-Hitchcock imposed increased restrictions on her based on the September 29 incident. Furthermore, supporting Dartmouth-Hitchcock's explanation, the issue was isolated, occurring only on September 29. Colligan attended appointments on September 14, 15, and 22

6

without incident. As Colligan never sought treatment at
Dartmouth-Hitchcock after September 29, the issue did not
reoccur.

Nor does Colligan offer evidence from which a jury could
reasonably infer that the September 29 incident occurred because
Colligan engaged or wished to engage in protected conduct.
Colligan claims that an unidentified person[3] advised the security
officer to require an escort on September 29 because "counsel
for Dr. Colligan demanded that Dartmouth-Hitchcock lift its
discriminatory restrictions on her access to healthcare." Doc.
56-1 at 7. She provides no evidence, however, to show that her
demand had anything to do with the escort requirement.
Therefore, Colligan has not presented sufficient evidence to
create a genuine dispute about whether the escort requirement of
September 29 was designed by Dartmouth-Hitchcock to interfere
with Colligan's protected rights.[4]

---

[3] David Luther testified that Gary Dimick, a "day-shift officer," informed him that Colligan required an escort for her appointment on September 29. Doc. 48-23 at 4. Luther did not ascertain why Dimick believed that Colligan required an escort or who, if anyone, told Dimick that Colligan required an escort. Dimick's testimony, if it was taken, is not before the court. The missing links in Colligan's evidence are fatal to her argument that Dartmouth-Hitchcock's security officers were told to require Colligan to have an escort to her appointment because her attorney submitted a demand letter.

[4] Although the court finds that a genuine dispute of fact does not exist about whether Dartmouth-Hitchcock intentionally imposed an escort requirement to interfere with a protected

7

C. <u>Statements from Dartmouth-Hitchcock Personnel on Scope of Restrictions</u>

Colligan argues that Dr. Keith Loud's September 23, 2015, e-mail was a modification of the restrictions listed in the September 2 letter. In the e-mail, Loud stated that Colligan could not conduct a presentation because he had been notified that Colligan was "no longer allowed on the DHMC campus other than [for] emergen[cy] care." Doc. 48-29 at 2. Colligan appears to contend that statement increased the restrictions because Loud did not note the additional exception for scheduled appointments.

After Colligan received Loud's e-mail, however, she communicated with her healthcare providers who informed her that she could keep her scheduled medical appointments. Furthermore, Colligan was not <u>prevented</u> by security from attending her scheduled medical appointment on September 29, 2015. Instead, Colligan reacted strongly to questioning by security, causing her to become so upset that she required emergency treatment. Colligan offers no evidence that she would have been denied access to her scheduled medical appointments after September 29 had she sought to continue treatment at Dartmouth-Hitchcock.

---

right, that finding does not extend to any claim that Dartmouth-Hitchcock negligently failed to ensure that its security officers followed the restrictions listed in the September 2 letter.

8

Therefore, Colligan did not show that Loud's e-mail modified the restrictions listed in the September 2 letter.

Colligan contends that Dartmouth-Hitchcock again modified the restrictions on March 15, 2016, pointing to an exchange that occurred between her and another Dartmouth-Hitchcock security officer. According to Colligan, in response to her inquiry about whether Dartmouth-Hitchcock's "Aging Resource Center" was considered part of Dartmouth-Hitchcock's campus, the officer stated: "You cannot go to any of our facilities. We have employees there." Doc. 48-3 at 11. Colligan asked whether she could call beforehand and attend a meeting at the Center, but the officer replied that she "cannot enter [the Aging Resource Center] building at all." Id. Colligan appears to contend that, by stating that Colligan could not go to any of Dartmouth-Hitchcock's facilities, the security officer revoked the exceptions in the September 2 letter that allowed Colligan to enter Dartmouth-Hitchcock property for emergency care and scheduled appointments.

Considered in context, the security officer's statement is limited to Colligan's ability to access the Aging Resource Center and the general restriction on her access to Dartmouth-Hitchcock's property. The security officer did not tell Colligan that the exceptions in the September 2 letter for emergency care and scheduled appointments had been revoked.

9

Therefore, Colligan did not show that the security officer's statement modified the restrictions detailed in the September 2 letter.

Furthermore, even if Loud's e-mail or the security officer's statement could be construed to materially deviate from the restrictions in the September 2 letter, Colligan failed to show or argue that the security officer or Loud had the authority to modify the restrictions. Indeed, the September 2 letter told Colligan to direct all questions to the Dartmouth-Hitchcock Office of General Counsel.

D.  Reason for Move to Massachusetts

Finally, Colligan argues that the court's statement that she moved to Massachusetts because of the embarrassment resulting from the public knowledge of the September 1, 2015, incident lacks evidentiary support. Colligan correctly observes that she presented evidence that she moved because of her and her husband's inability to access healthcare around Hanover, New Hampshire.

The court considered this evidence in the context of Colligan's public accommodation claims, which were not dismissed on summary judgment. In rejecting Dartmouth-Hitchcock's claim that the public accommodation claims are moot, the court found the evidence was material: "[Colligan] has offered evidence

10

suggesting that Dartmouth-Hitchcock's restrictions deter her from returning" to Hanover. Doc. 55 at 18. Colligan's reason for moving to Massachusetts, however, is not material to Colligan's interference claims, which are the subject of the motion for reconsideration.

Colligan has not shown a manifest error of fact or law as to the court's granting of summary judgment in Dartmouth-Hitchcock's favor on her interference claims. Colligan's motion for reconsideration is denied.

## II. Dartmouth-Hitchcock's Motion for Reconsideration

In its motion for reconsideration, Dartmouth-Hitchcock argues that the court incorrectly denied summary judgment on Count VII, which is Colligan's NIED claim. Dartmouth-Hitchcock asserts that the court's summary judgment order on that claim is based on manifest errors of law. Colligan responds that Dartmouth-Hitchcock belatedly expands the scope of its motion for summary judgment to include arguments it never presented to the court and that, in any event, the court's legal conclusions as to her NIED claim are correct.

### A. Preclusion by Court's Findings on Employment Discrimination

Dartmouth-Hitchcock argues that no genuine issue of material fact can exist on Colligan's NIED claim because the

11

court found, as a matter of law, that no discrimination occurred when it granted summary judgment in Dartmouth-Hitchcock's favor on Colligan's employment discrimination claim. Dartmouth-Hitchcock misunderstands the court's order. In granting Dartmouth-Hitchcock's motion for summary judgment on Colligan's employment discrimination claim, the court found that Colligan failed "to establish that a reasonable factfinder would decide that disability discrimination was the sole reason for her termination." Doc. 55 at 14 (emphasis added). Furthermore, the court denied summary judgment on Colligan's public accommodation discrimination claim. Therefore, the court did not exclude, as a matter of law, the possibility that a jury could find that discrimination occurred.[5]

Dartmouth-Hitchcock also argues, for the first time, that Colligan has put forward insufficient evidence to support her NIED claim to the extent it is based on discrimination rather than breach of contract. The court will not address this fact-based argument because it was not raised in Dartmouth-Hitchcock's summary judgment motion. See Biltcliffe, 772 F.3d at 930.

---

[5] For the purposes of the NIED claims, Colligan need not prove discrimination that would violate the ADA. Instead, she must prove that Dartmouth-Hitchcock negligently caused foreseeable and serious mental and emotional harm accompanied with objective physical symptoms. Tessier v. Rockefeller, 162 N.H. 324, 342 (2011).

12

B.   Cause of Action Arising from Breach of Contract

Dartmouth-Hitchcock contends, as it did in its motion for summary judgment, that New Hampshire law forbids recovery of emotional distress damages in claims arising from a breach of contract. Colligan responds that the court addressed this argument in its summary judgment order and that she does not base her claim on a breach of a contract.

In its motion for summary judgment, Dartmouth-Hitchcock argued that "to the extent" Colligan's emotional distress claim was based upon an alleged breach of Colligan's contract with Dartmouth-Hitchcock, it was precluded by Crowley v. Glob. Realty, 124 N.H. 814 (1984), Jarvis v. Prudential Ins. Co., 122 N.H. 648, 654 (1982), and Lawton v. Great Sw. Fire Ins. Co., 118 N.H. 607, 615 (1978).[6] The court accepted Dartmouth-Hitchcock's legal proposition, but nevertheless found that Dartmouth-Hitchcock was not entitled to judgment as a matter of law because Colligan offered facts showing that her NIED claim was

---

[6] Excluding citations, the following was Dartmouth-Hitchcock's argument on this point in its motion for summary judgment: "Specifically to the extent that this claim is based upon the termination of her LLC's contract, that cannot be the basis for negligent infliction of emotional distress. The New Hampshire Supreme Court has repeatedly 'stated that recovery of damages for mental suffering and emotional distress is not generally permitted in actions arising out of breach of contract.'" Doc. 36-1 at 27.

13

not a breach of contract claim disguised as a tort claim.
Doc. 36-1 at 27; Doc. 55 at 28-29.

Elaborating on its argument, Dartmouth-Hitchcock now suggests that an NIED claim is precluded if it arises from the same circumstances as a potential breach of contract or from a contractual relationship. Dartmouth-Hitchcock bases its position on the statement in Crowley that "recovery of damages for mental suffering and emotional distress is not generally permitted in actions arising out of breach of contract." 124 N.H. 814, 817. Dartmouth-Hitchcock's expansive interpretation of that rule, however, is undercut by Crowley itself.

In Crowley, the court applied the rule it took from Lawton and Jarvis only as to the plaintiff's breach of contract claim. Id. ("The contract count presently before us falls within the rule of Lawton and Jarvis, and thus the plaintiffs' claim for [emotional distress] damages must fail."). The plaintiff in Crowley also brought tort claims for intentional and negligent misrepresentation. Id. Even though the tort claims arose from the same circumstances as the contractual relationship, the court did not apply the Lawton and Jarvis rule to bar recovery of emotional distress damages. See id.[7] Therefore, contrary to

---

[7] To be sure, the court concluded "that the plaintiffs cannot recover damages for mental and emotional distress in a claim for negligent misrepresentation." Id. at 818. The court, however, barred such a recovery not because the

14

Dartmouth-Hitchcock's argument, Crowley does not create a bar to NIED claims in cases that merely involve a contractual relationship.

Dartmouth-Hitchcock also takes issue with the court's statement in the summary judgment order that Colligan could base her NIED claim on "the manner in which Dartmouth-Hitchcock breached the contract," but Dartmouth-Hitchcock fails to note the next sentence, which clarifies and adds further context: "In other words, Colligan's claim focuses on the emotional distress caused by Dartmouth-Hitchcock's alleged discrimination, not on the emotional distress caused by the loss of her employment."  Doc. 55 at 29.  The court thus found only that Colligan's NIED claim is not a breach of contract claim disguised as a tort claim, as was the case in Lawton, for example.  See 118 N.H. at 609, 615 (recasting insured's claims against insurer for "negligent" and "reckless" "failure to make payment" on an insurance contract as breach of contract claims and consequently rejecting recovery of emotional damages because they "are not generally recoverable in a contract action").

---

misrepresentation claim arose from a breach of contract, but because New Hampshire only permits recovery for "actual pecuniary loss" and consequential damages such as physical injury in negligent misrepresentation claims.  Id.  Colligan does not raise any misrepresentation claim in this case.

15

C.  Existence of NIED Claim Based on Discrimination

Dartmouth-Hitchcock asserts that New Hampshire would not recognize any discrimination-based tort claim because an adequate statutory remedy exists and because Colligan cannot show that Dartmouth-Hitchcock breached any duty it owed to her. Colligan responds that Dartmouth-Hitchcock did not present these arguments in its motion for summary judgment, so they are inappropriate for reconsideration.

Dartmouth-Hitchcock's cursory recitation of New Hampshire caselaw precluding recovery of emotional distress damages in breach of contract claims was far from sufficient to raise a question about whether a discrimination-based NIED claim is viable under New Hampshire law. In its summary judgment motion, Dartmouth-Hitchcock never challenged whether New Hampshire would, under these circumstances, recognize an NIED claim or whether Colligan could show that Dartmouth-Hitchcock breached a duty it owed to her. Therefore, neither the court nor Colligan had any reason to address those issues. The court declines to address them now. See Biltcliffe, 772 F.3d at 930.

Dartmouth-Hitchcock claims that it could not have raised these issues earlier. Colligan, however, stated in her response to Dartmouth-Hitchcock's motion for summary judgment that her NIED charge was not based on a breach of contract but on Dartmouth-Hitchcock's "conduct in relation to her mental

16

disabilities," which includes alleged discrimination and is the focal point of Colligan's lawsuit.  Doc. 48 at 31.  In her Amended Complaint, Colligan likewise alleged that the NIED claim was based on Dartmouth-Hitchcock's conduct in relation to her disabilities.  Doc. 7 at 26.  Therefore, the nature of Colligan's claims was apparent when the motion was filed.

## Conclusion

For the foregoing reasons, the court denies Colligan's motion for reconsideration (document no. 56) and Dartmouth-Hitchcock's motion for reconsideration (document no. 57).

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

February 19, 2019

cc:   William E. Christie, Esq.
      Natalie J. Laflamme, Esq.
      Timothy John McLaughlin, Esq.
      William D. Pandolph, Esq.
      Christopher James Pyles, Esq.

17