UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

R. Lacey Colligan

    v.                                      Civil No. 16-cv-513-JD
                                                  Opinion No. 2019 DNH 180

Mary Hitchcock Memorial
Hospital and Dartmouth Hitchcock Clinic


O R D E R

Defendants Mary Hitchcock Memorial Hospital and Dartmouth Hitchcock Clinic ("Dartmouth-Hitchcock") move in limine to preclude Roger Pitman, M.D., a medical expert offered by Plaintiff R. Lacey Colligan, from "offering any opinions or testimony concerning human resources' standards or practices." Doc. no. 70-1 at 1. Colligan objects, contending that Dartmouth-Hitchcock's motion is untimely and fails on its merits.

Standard of Review

"Federal Rule of Evidence 702 provides that '[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion' if his 'scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.'" United States v. Tetioukhine, 725 F.3d 1, 6 (1st Cir. 2013) (quoting Fed. R. Evid. 702). In

addition, an expert witness's testimony must be based "on sufficient facts or data" and must be "the product of reliable principles and methods" that the expert has reliably applied to the facts of the case. Fed. R. Evid. 702. If an expert is found to be qualified, his opinion testimony must then be evaluated under the balancing test of Federal Rule of Evidence 403. Tetioukhine, 725 F.3d at 6. "The proponent of the evidence bears the burden of demonstrating its admissibility." Id.

## Discussion

This case revolves around the sequence of events surrounding Colligan's dismissal from a research position with Dartmouth-Hitchcock and Dartmouth-Hitchcock's restriction on her access to its public medical facility. Colligan retained Roger Pitman, M.D., to serve as an expert witness about how these events affected her mental health. In his expert report, after a thorough review of Colligan's background, medical history, and perspective of the events, Dr. Pitman stated the following: "In the wake of the incident at the Birkmeyer residence, there followed what can only be regarded, at least based upon Dr. Colligan's report, as deplorable practices on the part of DHMHC Human Relations." Doc. no. 86-1 at 36. Dr. Pitman then listed six specific actions by Dartmouth-Hitchcock that, he concluded,

2

led to a "severe decline" in Colligan's mental health.  Doc. 86-1 at 36-37.

Given Dr. Pitman's report and deposition testimony, Dartmouth-Hitchcock argues that Dr. Pitman should be precluded from testifying about human resources standards and about Dartmouth-Hitchcock's human resources actions and practices. Colligan responds that Dartmouth-Hitchcock's motion is untimely. Colligan also argues that Dartmouth-Hitchcock mischaracterizes the nature of Dr. Pitman's testimony and that Dr. Pitman is qualified to opine about the mental health consequences of Dartmouth-Hitchcock's alleged conduct.

A.  Timeliness

Colligan contends that Dartmouth-Hitchcock's motion is untimely because the time to challenge expert witnesses expired on December 1, 2018.  On February 14, 2019, however, the court granted Dartmouth-Hitchcock's motion to continue the trial (doc. no. 61), which incorporated an addendum (doc. no. 62) that stated the deadline to challenge experts would be moved to 45 days from the trial date.[1]  The trial date was eventually set as November 5, 2019.  Dartmouth-Hitchcock filed its motion to

---

[1] Colligan objected to the modification to the deadline for challenging expert witnesses, but the court granted Dartmouth-Hitchcock's motion in its entirety.  CM/ECF Dkt. Entry dated February 14, 2019.

exclude Dr. Pitman on September 20, 2019, which is within 45 days from November 5, 2019.  Therefore, the motion is timely.

    B.   Merits

    Dartmouth-Hitchcock argues that Dr. Pitman cannot testify about human resources standards and practices because he is not qualified in that field; that Dr. Pitman's opinions about Dartmouth-Hitchcock's human resources actions and practices are not based on sufficient data or reliable principles and methods; and that Dr. Pitman makes impermissible credibility determinations.  Colligan responds that Dr. Pitman was not asked to and did not opine about human resources standards of care and that Dr. Pitman is qualified to testify about the medical issues in this case on the basis of his understanding of the events as relayed to him by Colligan.

         1.   Qualifications for Opinion on Human Resources
              Standards

    Dartmouth-Hitchcock argues that that Dr. Pitman has no specialized knowledge, skills, experience, training, or education to qualify him as an expert on human resources standards.  Colligan does not contest that Dr. Pitman is unqualified to opine about human resources standards, but instead contends that Dr. Pitman did not hold himself out as an expert on human resources standards.  The court agrees.  Dr.

Pitman's opinion relates to how the actions of Dartmouth-Hitchcock's human resources personnel affected Colligan's mental health. Dr. Pitman does not profess to opine about whether those actions were proper or improper under any standard of care for human resources.

At bottom, Dartmouth-Hitchcock takes issue with Dr. Pitman's characterization of its actions as "deplorable practices." While Dr. Pitman's characterization of Dartmouth-Hitchcock's actions does not necessarily transform his medical opinion into an expert opinion about human resources standards, to the extent it can be interpreted as doing so, the court will preclude Dr. Pitman from characterizing Dartmouth-Hitchcock's actions in this way at trial. However, Dr. Pitman may testify about his understanding of the actions taken by Dartmouth-Hitchcock and the effects that those actions had, in Dr. Pitman's opinion, on Colligan's mental health.

### 2. Reliability of Data and Methods

Next, Dartmouth-Hitchcock contends that "[t]he conclusory opinions about D-H's actions and HR practices in general are not based on sufficient facts." Doc. no. 70-1 at 8. Dartmouth-Hitchcock also contends that there is no methodology behind Dr. Pitman's opinion about Dartmouth-Hitchcock's human resources practices. As noted, Dr. Pitman did not provide an opinion

5

about human resources standards or about Dartmouth-Hitchcock's actions and practices. Nevertheless, Dartmouth-Hitchcock argues that Dr. Pitman cannot testify about Dartmouth-Hitchcock's actions and practices because he "relied solely on Dr. Colligan's perspective and retelling of events." Id. In other words, Dartmouth-Hitchcock seeks to exclude Dr. Pitman's opinion or to prevent Dr. Pitman from testifying about the basis for his opinion because, according to Dartmouth-Hitchcock, he was not fully informed of the facts relevant to Dartmouth-Hitchcock's actions in this case.

Expert testimony must be "based on sufficient facts or data[.]" Fed. R. Evid. 702(b). Dr. Pitman's opinion, however, is not based on insufficient facts merely because he relied on Colligan's perspective alone. See Packgen v. Berry Plastics Corp., 847 F.3d 80, 86 (1st Cir. 2017) (stating that the expert's testimony did not need to establish the validity of a disputed factual claim to have a factual basis and be admissible); Cummings v. Standard Register Co., 265 F.3d 56, 65 (1st Cir. 2001). As Colligan observes in her response, "to the extent that [Dartmouth-Hitchcock] intend[s] to introduce evidence at trial that they believe will contradict the basis of Dr. Pitman's opinions, such evidence would rebut the weight of his testimony on cross-examination but would not change its

admissibility on direct examination." Doc. no. 86 at 9; Crowe v. Marchand, 506 F.3d 13, 18 (1st Cir. 2007) ("[T]he district court's gatekeeping function ought not to be confused with the jury's responsibility to separate wheat from chaff."). While Dartmouth-Hitchcock attempts to reframe Dr. Pitman's explanation of the factual basis for his medical opinion as an opinion about human resources practices or standards, Dr. Pitman is clear in his report and deposition that his intent is to opine about the psychiatric effects of Dartmouth-Hitchcock's actions on Colligan, not on applicable or inapplicable human resources standards and whether they were violated.

### 3. Credibility Determinations

Lastly, Dartmouth-Hitchcock asserts that, by relying solely on Colligan's point of view to form his opinions, Dr. Pitman makes inappropriate credibility determinations. This argument lacks merit. Dr. Pitman did not make any credibility determinations in his report, and he did not indicate that he intends to testify about the credibility of any fact witnesses. Furthermore, in his deposition and in his report, Dr. Pitman suggested that his opinion could be contingent on the accuracy of the relevant facts. See doc. no. 86-3 at 18, 20-21; doc. no. 86-1 at 38-39 ("I reserve the right to revise or update the contents of this report, including the diagnoses and opinions,

7

upon the receipt of additional information that I had not received at the time of its writing."). Therefore, there is no issue as to improper credibility determinations.

## Conclusion

For the foregoing reasons, Dartmouth-Hitchcock's motion in limine (doc. no. 70) is granted <u>only</u> as to Dr. Pitman's characterization of Dartmouth-Hitchcock's practices as "deplorable".[2] The motion is otherwise denied.

SO ORDERED.

*/s/ Joseph A. DiClerico, Jr.*
Joseph A. DiClerico, Jr.
United States District Judge

October 10, 2019

cc: Counsel of Record

---

[2] Dr. Pitman is to be instructed to avoid this characterization during his testimony.